**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 16-10740** |
| **JOHN J. GORMAN, IV** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

**MOTION TO CONVERT CASE TO CHAPTER 7 OR**
**FOR APPOINTMENT OF A TRUSTEE**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

John Byram ("Byram"), a creditor and party-in-interest herein, files this *Motion to Convert Case to Chapter 7 or for Appointment of Trustee* (the "Motion") and would show as follows:

**RELIEF REQUESTED**

1.      Byram requests the entry of an order converting this case to a case under Chapter 7 of the Bankruptcy Code for cause under §1112(b)(1), including, but not limited to, cause under §1112(b) (4)(A), 4(B), and (4)(F), to wit: substantial and continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, unexcused failure to timely satisfy any filing or reporting requirements established under the Bankruptcy Code and Bankruptcy Rules, and other cause which may arise after the filing of this motion, including, but not limited to, failure to file tax returns due after the date of the order for relief.

2.      In the alternative, Byram seeks the entry of an order appointing a trustee under §1104(a)(1) for cause, including fraud, dishonesty, incompetence, and gross mismanagement

before and during the case and for similar cause, and under §1104(a)(2) because such an appointment is in the best interest of the estate.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

4.      Gorman has demonstrated an utter disregard for the truth both before and after the filing and has engaged in a pattern of liquidating millions of dollars in assets over the last three years but is unable to account for what he did with the proceeds.

5.      A complete financial analysis is problematic because Gorman has not filed a tax return for 2014, 2015 or 2016;[1] however, the scale of Gorman's efforts to defraud creditors can be gleaned from Gorman's post-petition conduct. The schedules of assets and liabilities and income and expenses ("Schedules") and statement of financial affairs ("SOFA")  initially filed by Gorman are patently false and provide ample evidence that Gorman is concealing or has fraudulently transferred a substantial amount of cash and other assets. For example, he reported total income of $25,000 in 2016 on his SOFA but, as it turns out, he received at least $442,217.86 in cash in 2016 prior to his bankruptcy filing from various sources which he failed to report on his SOFA. More significantly, it does not appear that he used those funds to pay creditors (because he has reported only minimal payments to creditors) but he has been unable to explain what he did with those funds with any specificity other than to disclose that he took a

---

[1] Gorman has also failed to pay taxes for these years and the Internal Revenue Service has filed a proof of claim for $6.98 million.

vacation to Europe and spent about $100,000 on improvements to his $5.2 million homestead on the eve of bankruptcy.

6.      Gorman is not employed and is not engaged in business. His monthly expenses substantially exceed his $4,166 in monthly income. He has almost no cash and virtually no disclosed assets to liquidate to pay his claims. He is a vexatious litigant who owes his lawyers several hundred thousand dollars but testified at his creditors meeting that his plan to pay his creditors is to commence or continue litigation against various parties against whom he has grievances and pay the recoveries to his creditors. He could not explain how he was going to fund such litigation or why the creditors should believe that he has any merits to his claims, given his lack of success in prior litigation and his lack of credibility.

7.      As detailed below, Gorman initially reported $10.75 million in claims but underreported them by several million dollars.  Given the substantial likelihood that individual creditors will receive little, if any, payment on their claims from the liquidation of disclosed assets, the only chance creditors have to recover anything is for a trustee to conduct an investigation, recover fraudulently transferred assets, and trace Gorman's missing funds.

## GROUNDS FOR RELIEF

8.      Gorman filed a voluntary petition under Chapter 11 on June 27, 2016. He testified that he filed due to his lack of liquidity but could not testify to any triggering event which would require his filing on an emergency basis without taking the necessary time to correctly and fully prepare Schedules and SOFA before filing them under oath.

9.      He filed his Schedules and SOFA with his petition. They were filled with errors and omissions, misstatements and falsehoods as illustrated below. After many of the deficiencies were brought to light by creditors questioning Gorman at the first § 341 creditors' meeting, the

meeting was adjourned so that Gorman could file amended schedules. In his amended Schedules, he corrected many of his falsehoods in the initial schedules, but unwittingly revealed the magnitude of his efforts to defraud his creditors both in his amended Schedules and under further questioning at the reconvened creditors meeting.

10.     Gorman is not employed and does not have a business. His only income consists of quarterly payments of directors fees equal to $4,167 per month from Trenwick America Reinsurance,[2] an insurance company which is winding down. He expects this source of income to end in the near future. He reported his monthly expenses to be $34,700 per a month, or $7,800 net of $26,900 in monthly payments he scheduled in connection with his $5.2 million homestead[3] which he testified that he has not been paying.

11.     In his initial schedules, Gorman listed $10.75 million in claims, or $8.24 million in claims after deducting $2.51 million in claims secured by his $5. 2 million homestead (which will presumably be paid upon the sale of his homestead.)  The reported claims include usch items as $160,789.51 to NetJets for his personal use of private jets, $1,600,000 owed to James Pallotta which Gorman failed to pay when he purchased Pallotta's preferred shares in Westech Capital Corp. ("Westech") in a miscalculated effort to regain control of Westech, and $1,404,989 owed to 8 different law firms that represented him in the barrage of litigation in which Gorman has been involved, most of which he initiated.

12.     Gorman underreported his debts by several million dollars by omitting any claim of the Internal Revenue Service which subsequently filed a proof of claim for $6.98 million[4] and by scheduling several million dollars of claims by other creditors by scheduling their claims as

---

[2] Dkt #2, p. 49, Form 106I, Schedule I, 8h. Gorman's schedules report total income of $8,334 per month due to his incorrectly completing his schedules so that the $4,157 he actually receives is counted twice.
[3] Dkt #2, p. 51, Form 106J, Schedule J.
[4] The IRS claim includes a priority claim of $6.62 million.

"unknown."[5] Gorman subsequently filed amended schedules after the IRS and other creditors filed proofs of claims but still listed their claims as "unknown" rather than disputed, continuing his effort to underreport the magnitude of his debts.[6]

13.    Gorman initially scheduled assets of $15,956,202 but, upon closer inspection, Gorman's schedules reveal few, if any, assets available to pay creditors. Gorman claims a homestead of $5.2 million and exempt personal property of $1,473,699, so Gorman valued his reported non-exempt assets at $9,282,503.

14.    Gorman reported only about $8,000 in cash on hand and in in his accounts.[7] Other non-exempt assets reported on Gorman's initial schedules include:

    a.  a $5 million life insurance policy[8] which Gorman deleted in his amended schedules, testifying that the policy was a term policy with no cash surrender value;

    b.  a $3,097,459 claim for compensation against Westech which is disputed and virtually worthless;[9]

    c.  a $330,000 house in Austin that is not his homestead [10]which is unencumbered by a judgment lien in favor of Centennial Bank securing a judgment against Gorman

---

[5] For example, Gorman scheduled the claim of John Byram as unknown even though Byram's Original Petition states a claim for the recovery of the $1 million he invested with Gorman and lost.
[6] For example, Westech filed a proof of claim for a minimum of $2,000,000 which Gorman subsequently scheduled as unknown.
[7] Dkt. #2, p. 7, Form 106A/B, Part 4, Item 16 Cash $1000, Item 17.1 Prosperity Bank $5000; Item 18 Scott Trade/Fidelity Account $2000.
[8] Dkt. #2, p. 9, Form 106A/B, Part 4, Item 31 Transamerica Life Insurance Policy.
[9] Dkt. #2, p. 9, Form 106A/B, Part 4, Item 30 Westech Proof of Claim.  Gorman filed a **$4,284,057** proof of claim against Westech but claims that **$1,186,598** million of his claim is an exempt claim for wages under Texas law. On his amended Schedules, he lists a second claim against Westech for $5,440,655.40 which, in an ironic twist, he characterized as a "whistleblower" claim.
[10] Dkt. #2, p. 4, Form 106A/B, Part 1, Item 1.2.

of $1,657,141.14, plus accrued interest.[11] (Gorman scheduled Centennial Bank as having a claim in an "unknown" amount.)[12]

  d. $517,000 in "accounts receivables or commissions you have already earned" which duplicates a portion of Gorman's alleged claim against Westech; and

  e. $40,000 in common shares in Westech Capital Corp., which are worthless (and which he reported that he pledged as collateral to two law firms he owes $1,594,554.)

After deducting these assets, Gorman's initial schedules include assets valued by Gorman at $298,044 available to pay administrative expenses and unsecured creditors.

15.    Of that amount, Gorman scheduled $10,000 in various country club benefits[13] and $280,000 in a "patronage account" at Capital Farm Credit which he explained at his creditors' meeting is an account that accumulates as he makes mortgage payments, that he cannot withdraw funds from, but occasionally receives distributions when Capital Farm Credit declares a dividend.

16.    In addition to the assets Gorman scheduled with a disclosed value, Gorman scheduled numerous assets with "unknown" values. For example, he scheduled claims against numerous parties in an unknown amount including malpractice claims against seven law firms, and slander and libel claims against at least seven individuals.[14] (When asked at the creditors' meeting to explain how one of those individuals slandered him, he was unable to give a single example.). He also listed interests in 13 corporations, limited liability companies and limited

---

[11] Cause No. D-1-GN-15-000900; *Centennial Bank v. John J. Gorman, IV*; in the 53rd District Court of Travis County, Texas.
[12] Dkt. #2, p. 24. Schedule E/F, Part 2, Item 4.15.
[13] Dkt #2, p. 9, Form 106A/B, Part 4, Item 27
[14] Dkt #2, p. 10, Form 106A/B, Part 4, Item 33

partnerships but did not disclose a value for any of those interests.  He did not even disclose his percentage interest in nine of them.[15]

17.     Gorman also scheduled five exempt IRAs and Roth IRAs on his schedules, one of which he valued at $22,769.80 and the rest of which he valued at under $50.[16] But under questioning at the first creditors' meeting, Gorman testified that one of the IRA's owned a ranch in Mexico that exceeded the value stated in any of his IRAs. At the second creditors' meeting, he was unable to name the custodians of his IRAs and testified that he bought and sold assets in his IRAs on his own, calling into question whether his IRAs are exempt qualified retirement plans or shams.

18.     Gorman also displayed a curious inconsistency in valuing his exempt property. For example, he was able to place a value of $500 on "3 sets of golf clubs, 2 bicycles, 1 baseball glove, 6 frisbees, 12 dog toys, and 11 fishing poles," but he was unable to place a value on "39 Assorted Pieces of Art, 100 bottles of Gorman Family Wine and 15 Hunting Trophies." Overall Gorman's valuation of his exempt property is seriously suspect.

19.     When asked at the creditors' meeting what his plan is, Gorman answered that he was going to pursue all of his claims listed in his schedules and pay his creditors out of the recoveries. Gorman disclosed in his amended SOFA that the balance of the retainer he paid his bankruptcy counsel on the date of filing was $40,000.[17] He was unable to state how he would fund the litigation. To put this in some perspective, it does not appear from the litigation reported in his statement of financial affairs, that Gorman has prevailed in a single lawsuit other than a minor personal injury claim.

---

[15] Dkt #2, p. 7-8, Form 106A/B, Part 4, Item 19
[16] Dkt #2, p. 8, Form 106A/B, Part 4, Item 21
[17] Dkt #29, p. 7, SOFA Part 7, Item 16

20.     Gorman's initial SOFA is not remarkable for what Gorman disclosed but what Gorman concealed.  For the year 2016 to the date of filing, Gorman reported gross income from "wages, commissions, bonuses, tips" of $25,000 and stated that he did not receive any other income from any other sources.[18] He lied. He failed to disclose $298,475.86 he later admitted that he received in 2016.

21.     Gorman failed to report that he received $41,813.15 on or after March 18, 2016 in repayment of a real estate loan he had made to his now deceased father. Gorman also failed to disclose the lawsuit out of which the payment arose.[19] In that lawsuit, the executrix of the estate of Gorman's father sued Gorman in November 2015, claiming that Gorman's father fell gravely ill while visiting family in Austin, when Gorman wrongfully charged $33,000 on his father's credit card (including $15,000 to pay his own personal property taxes), forged his father's checks totaling $13,600, and fraudulently endorsed rent checks payable to his father in the amount $1,932.59. The executrix further alleged that Gorman's father learned of Gorman's theft and became furious, so Gorman agreed to reduce the outstanding amount of a real estate loan he had made to his father in 2010 from over $80,000 in principal and accrued interest to $40,000. Gorman's father subsequently died but conveyed the real property to his other son, Jerome, before his death. Jerome entered into a contract to sell the property and agreed with the executrix to use a portion of the proceed to satisfy the loan from Gorman but Gorman reneged on his promise to his father and insisted on payment of over $80,000 in principal and interest to release the lien. To clear title, the estate sued Gorman. Gorman did not contest the lawsuit and on March 18, 2016, a default judgment was entered against Gorman, authorizing the payment of $41,813.15 to Gorman out of the proceeds of the sale.

---

[18] Dkt #3, p. 2, SOFA, Part 2, Items 4 and 5
[19] MON-C-170-15; *Estate of John J. Gorman, III v. John J. Gorman, IV and Jerome S. Gorman*; in the Superior Court of New Jersey, Monmouth County.

22.     Under questioning at the first creditors meeting, Gorman admitted that he had not disclosed the payment, which he recalled was "about $30,000." In his amended schedules, he disclosed he lawsuit and apparently intended to disclose the $41,813.15 payment but did not. Gorman's counsel advised creditors that the subsequent omission was his mistake.

23.     Gorman also failed to initially disclose that in or about February 2016 Gorman received $168,034.14 from his attorney Mitchell Savrick which were insurance proceeds, net of the fees deducted by Mr. Savrick, that Mr. Savrick had recovered from AIG for the reimbursement of attorneys' fees which Gorman owed to other law firms for their representing him in lawsuits against him as an officer or director of Westech Capital Corp. Gorman did not use those funds to pay those attorneys and could not explain what he did with them.

24.     Gorman also failed to initially disclose that he received $50,000 on April 4, 2016 from Ivan Bilbao-Lavieja in satisfaction of a personal injury lawsuit Gorman filed against him in the United States District Court for the District of New Jersey and also failed to disclose the existence of the lawsuit.[20]

25.     Gorman also failed to initially disclose receipt of "interest/dividends" of $18,628.57 in 2016 but added that item to his "other income' in his amended SOFA.[21]

26.     In addition to the $278,475.86 in undisclosed income detailed above, he failed to disclose a $20,000 refund he received on the eve of bankruptcy from his bankruptcy counsel.

27.     Gorman also received $143,742 on May 6, 2016 for the "termination of warrant rights" in Hundred Acres Wine Group, Inc. which he did disclose as a transfer of assets on his SOFA but did not include this in his "other income" on his SOFA.[22]

---

[20] Gorman later disclosed this lawsuit and the receipt of the funds in his amended schedules filed after he was questioned at the first creditors' meeting.
[21] Dkt #29, p. 2, SOFA, Part 2, Item 5.
[22] Compare  Dkt #3, p. 2, SOFA, Part 2, Items 4 and 5 to Part 7, Item 18.

28.     So Gorman received at least $442,217.86 in cash in 2016 up to the date of bankruptcy which he failed to report as "other income" on his SOFA. Moreover, Gorman was unable to explain at the two creditors' committee meetings that have been held what he did with that income. He apparently did not use it to pay debts because Gorman swore in his initial SOFAs that he did not make any payments to insiders within a year and no payments to any non-insider creditor in excess of $6,425 within 90 days of the filing.[23]

29.     When questioned, Gorman admitted that he took a trip to Europe in the Spring of 2016 (which he reportedly took with a girlfriend). He also "admitted" that he spent "about $100,000" on the eve of his bankruptcy filing to make improvements on his $5.2 million homestead to prepare it for sale, apparently unaware of the consequences of such an admission.

30.      Gorman failed to disclose any transfers to insiders during 2016 in his initial SOFA but, in his amended SOFA, he  disclosed transfers (not payment of debts) of $62,545 to R Bar C, LLC, a non-operating limited liability company owned 100% by Gorman which Gorman listed as having an unknown value.[24]

31.     It is difficult to determine how much income Gorman has made over the last few years, because he has not filed tax returns or paid any taxes for 2014, 2015, or 2016.  He apparently did not use any of his substantial unreported income to retain an accountant to prepare the returns, and has not retained an accountant during this case to prepare them. It appears he does not intend to timely file his 2015 tax return by October 15, 2016, when it is due. Nonetheless, Gorman's recent liquidation of assets and failure to disclose or account for his substantial income from the liquidation of his assets follows a pattern of what appears to be campaign over the last three years to obtain several million dollars in cash by illicit means and

---

[23] In his amended SOFA, Gorman only disclosed two payments to creditors within 90 days of the filing, totaling under $14,000, including a payment of $6,533.89 to his attorney Mitchell Savrick.
[24] Dkt. 28, p. 5, Schedule A/B, Part 4, Item 19.

through the liquidation of his art and wine collection and other assets, without accounting for the use of those funds.

32.     In June 2013, Gorman resigned from his positions with Westech and Tejas Securities Group, Inc. ("Tejas"), a broker/dealer subsidiary, after a report commissioned by a special committee of the board of directors revealed that he had engaged in a continuing course of wrongful conduct to enrich himself at the expense of Westech, Tejas and others.

33.     When Gorman resigned in June 2013, he paid himself $500,000 without authorization.

34.     Gorman had served as broker of record on the Tejas brokerage account of William Inglehart ("Inglehart"), Gorman's brother-in-law.  At about the time Gorman resigned from Tejas, he withdrew the entire $2,000,000 balance from Inglehart's brokerage account. Gorman listed a debt to Inglehart of $2,000,000 on his Schedules and testified at the creditors' meeting that this was a loan, but admitted that there were no terms, no interest rate, and no documentation to support his contention.

35.     Gorman initially failed to report any income other than wages for the last two calendar years but when he filed his amended schedules, he reported the following totals of asset sales[25] (among other newly revealed sources of income):

     a.  2014: $942,717.77

     b.  2015: $833,643.69

     c.  2016: $143,742.00

36.     His reported asset sales do not correlate with his reported transfers outside the course of business.  Gorman initially reported numerous transfers outside the ordinary course of

---

[25] Dkt #29, p 2, SOFA, part 2, Item 5

business over the two years prior to the filing date totaling $8,116,907,[26] consisting primarily of interest in real estate and businesses as well as the liquidation of a substantial art collection. When he amended his SOFA, Gorman added 11 transfers totaling an additional $738,074 including, among other transfers, the sale of a substantial wine collection, interests in condos and timeshares in Colorado and Florida, and additional transfers of art.

37.     Among the transfers Gorman reported were two fraudulent transfers of his 291 acre R Bar C Ranch in Dripping Springs, Texas (the "Ranch") in 2015 to AHA II Properties LLC ("AHA"), an entity owned by Gorman's friend, Arch Aplin.[27] On March 23, 2015 AHA purchased all but 20 acres of the Ranch by paying debts secured by liens on the Ranch owed to Capital Farm Credit, the IRS, and Arch Aplin, totaling $3,566,123.08.[28]

38.     On May 1, 2015 AHA bought the remaining 20 acres by paying debts secured by liens on the Ranch owed to the IRS to Bank of America in the total amount of $2,911,864.14[29], reportedly on the eve of foreclosure.

39.     Prior to these sales, Gorman listed the ranch for $13,700,000, which is over $7.2 million more than AHA paid for it. The brochure by the listing agent described the Ranch as follows:

> IMPROVEMENTS: 3/3.5 stone and stucco house with walkway to 2/1 guest house overlooking the creek. There is a state of the art wine cellar, three car garage, barn and corrals with bunkrooms and ample storage. In addition, there is a separate entertainment building or third guest house and a camp house on the creek for entertaining. The drive into the property is paved and the entrance is gated with a fountain. For recreation there is a skeet range, two swimming pools, chess, in-ground trampoline, horseshoes, dance floor and more. The property is high fenced and then cross fenced for exotics and native game. There are three tanks, approximately 15 wells each with rock well houses, underground electric,

---

[26] Dkt. #3, p. 6 SOFA, part  7, Item 18
[27] Dkt. #29, p. 9, SOFA, Part 7, Item 18
[28] Dkt. #29, p. 9, SOFA, Part 7, Item 18
[29] Dkt. #29, p. 8, SOFA, Part 7, Item 18

lighting systems, orchard, enclosed gardens, extensive rockwork along the creek and immense landscaping.

COMMENTS Dammed Bear Creek, one of the premier rock bottom and spring fed creeks in Hays County, meanders through the center of the ranch for nearly a mile. The creek has been dammed in several locations. The creek at the main house and party house are particularly enchanting. The improvements are extremely well executed and would be difficult, if not impossible, to replicate. The property is suited for use as a personal retreat, residential development or commercial uses.

40. After the sale AHA leased a house on the property to Gorman for $2,000 a month and Gorman currently resides on and purportedly manages the property through his entity R Bar C Ranch LLC. On Gorman's amended SOFA, Gorman discloses that he has made 13 transfers of cash to R Bar C Ranch LLC since the sale, totaling $79,645 which Gorman has not explained.[30]

41. In the deed recorded by AHA, AHA disclosed a "right of first refusal" which essentially grants Gorman the right to reacquire the property for what AHA paid for it plus a 10% rate of return if AHA enters into a contract to sell the property with another party. Gorman listed this right of first refusal as an asset with an unknown value.[31] In reality, the right of first refusal had no value. Gorman has no right to reacquire the property unless AHA proposes to sell the property to another buyer but the property is not currently listed and the right of first refusal expires by its terms in November 2016.

42. It is likely that what has been discovered so far is just a small portion of what a more thorough investigation would reveal. Under the circumstances, individual creditors should not be forced to shoulder the burden or cost of continuing the investigation.

**WHEREFORE,** Byram requests that the Court convert this case to a case under Chapter 7 or, in the alternative, appoint a trustee.

---

[30] Dkt. #29, p. 17, SOFA, Part 3, Item 7 (detail attached at p. 17)
[31] Dkt. #28, p. 7, Schedule A/B, Part 4, Item 25

Respectfully submitted,

*/s/ Stephen A. Roberts*
Stephen A. Roberts
**STRASBURGER & PRICE, LLP**
720 Brazos, Suite 700
Austin, Texas 78701
Tel. (512) 499-3660
stephen.roberts@strasburger.com

**COUNSEL FOR JOHN BYRAM**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served via the CM/ECF upon all parties entitled to such notice, and via U.S. first class mail to the parties on the attached Service List on the 9th day of September 2016.

*/s/ Stephen A. Roberts*
Stephen A. Roberts

Service List

Label Matrix for local noticing
0542-1
Case 16-10740-tmd
Western District of Texas
Austin
Fri Sep  9 12:38:24 CDT 2016

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

1821 LLC
1000 Gorman Springs Drive
Austin, TX 78737-9133

68 First Ave LLC
68 First Ave
Red Bank, NJ 07703

AHA III Properties, LLC
327 FM 2004
Lake Jackson, TX 77566-4980

Altus GTS, Inc.
PO Box 1389
Kenner, LA 70063-1389

American Express
PO Box 297858
Fort Lauderdale, FL 33329-7858

American Express
Po Box 650448
Dallas, TX 75265-0448

American Express Bank FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

American InfoSource LP as agent for
T Mobile/T-Mobile USA Inc
PO Box 248848
Oklahoma City, OK  73124-8848

At&t
PO Box 5001
Carol Stream, IL 60197-5001

Austin Country Club
4408 Long Champ Drive
Austin, TX 78746-1162

BMW Financial Services NA, LLC
5550 Britton Pkwy
Hilliard, OH 43026-7456

Bank of America
PO Box 851001
Dallas, TX 75285-1001

Barton Creek Country Club
8212 Barton Club Drive
Austin, TX 78735-1499

Bayard, PA
222 Delaware Avenue, Suite 900
Wilmington, DE 19801-1611

Blake Byram
c/o Stephen Roberts
Strasburger & Price, LLP
720 Brazos Street, Suite 700
Austin, TX 78701-2531

Bobby Martinez Racing
PO Box 24
Paige, TX 78659-0024

Botta Sferrazza Architects, PC
132 North Main Street
East Hampton, NY 11937-2758

Brady J. Diehl Enterprises, Inc.
1165 Manitou Ave
Steamboat Springs, CO 80487-4930

Brian J. Lester
Tarbet & Lester, PLLC
524 Montauk Hwy, PO Box 2635
Amagansett, NY 11930-2635

CITICards CBNA
PO Box 6241
Sioux Falls, SD 57117-6241

Capital City Limo of Austin, LLC
1000 Gorman Springs Road
Austin, TX 78737-9133

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

CapitalOne Bank NA
PO Box 71083
Charlotte, NC 28272-1083

Centennial Bank
13700 E. Arapahoe Road
Englewood, CO 80112-3903

Chase
PO Box 24696
Columbus, OH 43224-0696

Chase Bank USA NA
PO Box 15298
Wilmington, DE 19850-5298

City of Austin dba Austin Energy
721 Barton Springs RD
AUSTIN TX 78704-1145

Clinical Pathology Labs, Inc.
PO Box 141669
Austin, TX 78714-1669

Daimler Trust
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

Direct Propane Services
PO Box 619
Manor, TX 78653-0619

Elgin Veterinary Hospital, Inc.
PO Box 629
Elgin, TX 78621-0629

Elkins Kalt Weintraub Reuben Gartside
2049 Century Park East
Suite 2700
Los Angeles, CA 90067-3202

FROST
ATTN: BANKRUPTCY DEPT. T-9
P O BOX 1600
SAN ANTONIO, TX 78296-1600

Federal National Mortgage Assoc.
c/o Cole D. Patton
1255 West 15th Street, Ste. 1060
Plano, TX 75075-4220

Ford Motor Credit
P.O. Box 790119
Saint Louis, MO 63179-0119

Ford Motor Credit
PO Box 31111
Tampa, FL 33631-3111

(p)FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180

Fritz Byrne Head & Fitzpatrick, PLLC
221 West Sixth Street, Suite 960
Austin, TX 78701-3444

Frost Bank Recovery Dept
PO Box 2901
San Antonio, TX 78299-2901

Gregory S. Milligan, Chapter 11 Trustee of t
c/o Shelby A. Jordan
Jordan, Hyden, Womble, Culbreth & Holzer
500 N. Shoreline, Suite 900
Corpus Christi, TX 78401-0341

Hughes Network Systems
c/o Joseph Mann & Creed
8948 Canyon Falls Blvd., Suite 200
Twinsburg, OH 44087-1900

Humana
PO Box 14642
Lexington, KY 40512-4642

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

INTERNAL REVENUE SERVICE
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS
Centralized Insolvency Operation
PO Box 13528
Philadelphia, PA 19101-3528

J.P. Morgan
P.O. Box 78035
Phoenix, AZ 85062-8035

J.P. Morgan Chase
P.O. Box 78420
Phoenix, AZ 85062-8420

JB Goodwin Realtors
1613 S. Capital of Texas Hwy, Suite 100
Austin, TX 78746-6545

James J. Pallotta
280 Congress, Suite 1200
Boston, MA 02210-1023

James J. Pallotta
c/o Gregory P. Sapire
K&L Gates LLP
2801 Via Fortuna
Ste. 350
Austin, TX 78746-7596

John Byram
c/o Edward Burbach
Gardere Wynne Sewell, LLP
600 Congress Ave., Suite 3000
Austin, TX 78701-3056

John Byram
c/o Stephen A. Roberts
Strasburger & Price, LLP
720 Brazos, Suite 700
Austin, TX 78701-2531

John Joseph Gorman, V
5404 Maryanna Drive
Austin, Texas 78746-1226

Kerrigan Electric, Inc.
1 Marlpit Place
Middletown, NJ 07748-2028

LAKE AUSTIN LAKE POINTE HOMEOWNERS ASSOCIATI
c/o RMWBH
2800 Post Oak Blvd. Ste. 5777
Houston, TX 77056-6157

Lake Point Homeowners Assoc.
c/o First Service Residential Texas
7 Lakeway Centre Court, Ste. 102
Austin, TX 78734-2624

Lincoln Automotive Financial Services
PO Box 54200
Omaha, NE 68154-8000

Lineberger Goggan Blair & Sampson, LLP
1515 Cleveland Place, Suite 300
Denver, CO 80202-5113

Lochte Feed and General Store
PO Box 548
Fredericksburg, TX 78624-0548

McLean & Howard, LLP
901 S. Mopac, Building 2, Suite 225
Austin, TX 78746

Mercedes Benz Financial Services USA
c/o SRA Associates, Inc.
401 Minnetonka Road
Somerdale, NJ 08083-2914


NetJets Aviation, Inc.
PO Box 933300
Atlanta, GA 31193-3300

Northwest Parkway
c/o Linebargger Goggan Blair & Sampson
PO Box 659443
San Antonio, TX 78265-9443

Orion Investigations, Inc.
274 Douglas Road
Staten Island, NY 10304-1526


Progressive Waste Solutions
c/o Merchants & Professoinal Credit
5508 Parkcrest Drive, Suite 210
Austin, TX 78731-4929

Receivables Performande Management, LLC
20814 44th Ave W
Lynnwood, WA 98036

Seterus
PO Box 1077
Hartford, CT 06143-1077


Seterus, Inc.
PO Box 1047
Hartford, CT 06143-1047

Sheppard Mullin Richter
30 Rockerfeller Plaza
New York, NY 10112-0079

Sheppard, Mullin, Richter & Hampton LLP
Attn: Richard W. Brunette, Esq.
333 S. Hope Street, 43rd Floor
Los Angeles, CA 90071-1422


(p)SPRINT NEXTEL CORRESPONDENCE
ATTN BANKRUPTCY DEPT
PO BOX 7949
OVERLAND PARK KS 66207-0949

St. David's Heart & Vascular, PLLC
PO Box 402669
Atlanta, GA 30384-2669

Stellar Recovery
1327 Highway 2 West 100
Kalispell, MT 59901


Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036-7703

Steptoe & Johnson LLP
Michael Richardson
Beck Redden LLP
1221 McKinney, Suite 450
Houston, TX 77010-2045

Sussman Godfrey LLP
1000 Louisiana, Suite 5100
Houston, TX 77002-5096


Tamara Gorman
c/o Holly R. Davis
Kirker Davis LLP
8310 N. Cap. of Tex. Hwy, Bdg 1, Ste 350
Austin, TX 78731-1077

Tamra Gorman
c/o Holly R. Davis
Kirker Davis LLP
8310 N. Cap. of Texas Hwy, Blg. 1, #
Austin, TX 78731-1011

Tamra Inglehart Gorman
4404 A Dickson Street
Houston, Texas 77007-7467


Tamra Inglehart Gorman
c/o Berry D. Spears/Stephen Humeniuk
Locke Lord LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701-3055

Tejas Securities Group, Inc.
Michael L. Navarre, Ratliff Law Firm, PL
600 Congress Ave., Suite 3100
Austin, TX 78701-2984

The Search Engine Guys
Cloud8Sixteen, Inc.
115 Wild Basin Road, Suite 200
Austin, TX 78746-3347


The Wenmohs Group
5910 Courtyard Drive, Suite 230
Austin, TX 78731-3353

UT System obo UT at Austin
c/o The Office of General Counsel
201 West 7th Street
Austin, TX 78701-2902

United Healthcare
4 Research Drive
Shelton, CT 06484-6242


United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

University of Texas Longhorn Foundation
PO Box 7399
Austin, TX 78713-7399

Vernon Company
c/o Biehl & Biehl, Inc.
325 E. Fullerton Ave.
Carol Stream, IL 60188-1865

WILCOX LAW, PLLC
P.O. Box 201849
Arlington, TX 76006-1849

Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, TX 78701-4042

Wells Fargo Equipment Finance, Inc.
c/o Leyh Payne & Mallia, PLLC
9545 Katy Freeway, Suite 200
Houston, TX 77024-1469

Wells Fargo Equipment Finance, Inc.
c/o Steven A. Leyh
Leyh, Payne & Mallia, PLLC
9545 Katy Freeway, Suite 200
Houston, Texas 77024-1469

Westech Capital Corp.
c/o Stephen A. Roberts
Strasburger & Price, LLP
720 Brazos, Suite 700
Austin, TX 78701-2531

Westech Capital Corporation
c/o Stephen Roberts
Strasburger & Price, LLP
720 Brazos Street, Suite 700
Austin, TX 78701-2531

Wheeler Fairman & Kelley
301 Congress Ave., Suite 1175
Austin, TX 78701-2964

William Inglehart, III
2107 Handel Avenue
Henderson, Nevada 89052-5716

William Inglehart, John H. Groman,V
Tamra Ingelhart Gorman
c/o Richard Elliott
4709 West Lovers Lane. Ste. 200
Dallas, TX 75209-3178

Winstead PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201-1743

Winstead PC
c/o Annmarie Chiarello
500 Winstead Building
2728 N. Harwood St.
Dallas, TX 75201-1516

Xerox Suffolk
800 Washington Aveune, Suite 440
Baltimore, MD 21230-2344

Yung Keithly LLP
208 North Market Sreet, Suite 200
Dallas, TX 75202-3212

Zwicker & Associates, PC
80 Minuteman Road
Andover, MA 01810-1008

John J. Gorman IV
5404 Maryanna Drive
Austin, TX 78746-1226

Kell C. Mercer
Kell C. Mercer, P.C.
1602 E. Cesar Chavez
Austin, TX 78702-4456

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Ford Motor Credit Company LLC
c/o National Bankruptcy Service Center
P.O. Box 62180
Colorado Springs, CO 80962

INTERNAL REVENUE SERVICE
INSOLVENCY MS 5026 AUS
300 E. 8th Street
Austin, TX 78701

Sprint Corp.
Attn Bankruptcy Dept
PO Box 7949
Overland Park KS 66207-0949

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Dominion Diagnostics

(u)Hays Partnership

(u)Peggy Chern